### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **TRACIE ROBERTSON,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. 09-1188-RMU** |
| **v.** | | |
| | * | |
| **DISTRICT OF COLUMBIA, et al.,** | | |
| | * | |
| | * | |
| **Defendants.** | * | |

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
### IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS

Comes now the plaintiff, by and through counsel, and hereby submits his response to the defendants' motion to dismiss plaintiff's complaint. For the reasons set forth below, the plaintiff submits that no basis for dismissal exists as she has fully stated a Constitutional cause of action consistent with the guidelines established by the United States Supreme Court.

### I. STATEMENT OF RELEVANT FACTS

Plaintiff's decedent, Shantee Parker, suffered from mental illness for many years of her life. In fact, the defendants had previously encountered Ms. Parker and were well aware of her mental health frailties, including suicidal tendencies, long before May 5, 2008, when plaintiff's decedent was arrested by members of the Metropolitan Police department and taken to the 4th District Precinct for processing and detention.

The 4th District Precinct was itself beset by staffing and equipment problems that placed both detainees and police officers in immediate danger in May of 2008 and these deficiencies had been brought to the attention of the defendants no later than in January 2008. After being taken to the 4th

District Precinct following her arrest, plaintiff's decedent exhibited many signs of distress, disorientation, and confusion. Had members of the Metropolitan Police Department been properly and adequately trained, they would have immediately been alerted to the fact that plaintiff's decedent was making a plea for help and that suicide was being considered. Even still, plaintiff's decedent was placed in a room equipped with a camera. Unfortunately, the camera, as was the case with a lot of the equipment at the 4th District, did not work. Moreover, and even though plaintiff's decedent had clearly and persistently exhibited signs of distress and that she was a suicide risk, throughout her detention, none of the personnel at the 4th District, properly monitored plaintiff's decedent or assured that she was not placed in an environment where instruments that could be used in a suicide attempt, were not available.

The defendants failed to provide any care and/or treatment of any kind, nor did they monitor plaintiff's decedent in any way. As a direct consequence of these derelictions, plaintiff's decedent did in fact suffer a horrible death by way of a self-inflicted hanging. At all times relevant herein, defendant Cathy Lanier was responsible for the day to day operations of the Metropolitan Police Department and assuring that its police officers were properly trained and that each Police District was properly staffed and equipped. The suicide of plaintiff's decedent inside the 4th District Precinct, while in the custody of the defendants was the direct and proximate result of the negligence and deliberate indifference of the above-named defendants, agents, servants and/or employees, generally in the failure to properly hire, train and supervise employees of the detention facility; failure to fulfill its statutory duty to provide safekeeping, care, protection to all persons committed to the facility; and failure to follow normal and accepted penological and/or medical practices and procedures; and in particular, in its failure to properly monitor, assess, evaluate and treat the mental condition of

plaintiff's decedent; failure to adequately assess, classify and house plaintiff's decedent; and their failure to promptly intervene in plaintiff's decedent's act of self-inflicted injurious behavior. It is against the backdrop of these facts, that have been alleged by the plaintiff, that defendants seek to dismiss plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  ARGUMENT

### A.  Standard of Review

As noted above, the defendants have filed a motion pursuant to F.R.C.P. 12 (b) (6). With respect to a Rule 12(b)(6) motion, it is clear that plaintiff's complaint is sufficient if it sets forth " a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a). Moreover, the allegations set forth in the Complaint, together with all reasonable inferences that may be drawn from those allegations, are to be taken as true, and a motion to dismiss is to be denied, unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). See also, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002); *Leatherman v. Tarrant County NICU*, 507 U.S. 163, 164 (1993); *C&E Services v. District of Columbia*, 310 F.3d 197, 199 (D.C. Cir 2002). To the extent that a claim is "imperfectly stated," dismissal is inappropriate, and "leave to amend is ordinarily in order." *Alley v. Resolution Trust Corp.*, 299 U.S. App. D.C. 363, 984 F.2d 1201, 1207 (1993). With this standard in mind, it is readily demonstrated that plaintiff has alleged well-stated claims, and that the facts, once proven, will entitle plaintiff to the requested relief.

### B.  Plaintiff Has Clearly Pled A Constitutional Violation Cause Of Action

In her complaint, the plaintiff makes the following allegations in support of her constitutional violation claim for relief:

6. Plaintiff's decedent suffered from mental illness for many years of her life. In fact, the defendants had previously encountered plaintiff's decedent and were well aware of the decedent's mental health frailties, including suicidal tendencies, long before May 5, 2008, when plaintiff's decedent was arrested by members of the Metropolitan Police department and taken to the 4th District Precinct for processing and detention.

7.   The 4th District Precinct was itself beset by staffing and equipment problems that placed both detainees and police officers in immediate danger in May of 2008 and these deficiencies had been brought to the attention of the defendants no later than in January 2008.

8.   After being taken to the 4th Precinct following her arrest, plaintiff's decedent exhibited many signs of distress, disorientation, and confusion. Had members of the Metropolitan Police Department been properly and adequately trained, they would have immediately been alerted to the fact that plaintiff's decedent was making a plea for help and that suicide was being considered. Even still, plaintiff's decedent was placed in a room equipped with a camera. Unfortunately, the camera, as was the case with a lot of the equipment at the 4th Precinct, did not work. Moreover, and even though plaintiff's decedent had clearly and persistently exhibited signs of distress and that she was a suicide risk, throughout her detention, none of the personnel at the 4th Precinct, properly monitored plaintiff's decedent or assured that she was not placed in an environment where instruments that could be used in a suicide attempt were not available.

9. Because she was not provided any care and/or treatment of any kind, and because she was not monitored in any way, plaintiff's decedent did in fact suffer a horrible death by way of a self-inflicted hanging.

12. On or about May 6, 2008 at approximately 12:00 a.m., plaintiff's decedent was found hanging in her cell having allegedly hung herself. Said incident was later ruled a suicide by the medical examiner.

14. At all times relevant hereto, the defendants, jointly and severally, had a duty to assure that the persons detained at the 4th Precinct generally, and in particular Shantee Parker, were safe and secure; that they did not pose a danger to themselves or others; and that they were provided with reasonable mental health screening and evaluation and proper medical care.

15. The aforementioned suicide was the direct and proximate result of the negligence of the above-named defendants, agents, servants and/or employees, generally in the failure to properly hire, train and supervise employees of the detention facility; failure to control potential weapons; failure to properly supervise and control inmates in said facility; failure to properly monitor movements and activities of said inmates; failure

to properly classify and house inmates under its care, custody and control; failure to fulfill its statutory duty to provide safekeeping, care, protection to all persons committed to the facility; and failure to follow normal and accepted penological and/or medical practices and procedures; and in particular, in its failure to properly monitor, assess, evaluate and treat the mental condition of plaintiff's decedent; failure to adequately assess, classify and house

plaintiff's decedent; and their failure to promptly intervene in decedent's act of self-inflicted injurious behavior.

20. By failing to use reasonable care, failing to provide plaintiff's decedent with adequate medical treatment and evaluation, failing to protect plaintiff's decedent from identifiable and known risks of harm, the defendants, jointly and severally, negligently and with deliberate indifference, breached the duties owed to plaintiff's decedent.

21. As a direct and proximate result of defendants' deliberate indifference and negligent breach of the duties owed plaintiff's decedent died a horrible death by a self inflicted hanging.

24. This cause of action is brought pursuant to 42 U.S.C. 1983 and the Constitution of the United States, in particular, but not limited to, the Fifth and Eighth Amendments thereto.  The above-described acts and omissions of the defendants, including their failure to timely and fully assess plaintiff's decedent's mental condition by way of psychiatric evaluation and/or related measures, and their failure to properly monitor plaintiff's decedent even though they knew or should have known of plaintiff's suicidal tendencies, constituted deliberate indifference to Shantee Parker's obvious and serious medical needs in violation of the rights guaranteed her by the Fifth Amendment to the United States Constitution.

25. In failing to properly assess, evaluate and otherwise treat plaintiff's decedent as alleged herein, the defendants, jointly and severally, violated plaintiff's decedent's Constitutional rights by: maintaining a policy, custom pattern and practice of failing to provide detainees with adequate medical diagnosis and treatment; maintaining a policy, custom pattern and practice of failing to train correctional officials to provide detainees such as plaintiff's decedent with adequate medical and mental health screening and evaluation and follow-up; and the participation in the denial of adequate medical care by one or more decision makers

28. This cause of action is brought pursuant to 42 U.S.C. §1983 and the Constitution of the United States, in particular, but not limited to, the Fifth and Eighth Amendments thereto.

29. The above-described acts and omissions of the defendants, including their failure to timely and fully assess decedent's mental condition by way of psychiatric evaluation

and/or related
measures, constituted deliberate indifference to Shantee Parker's Constitutional right
to be free from a substantial risk of harm, including, but not limited to, being
protected from clearly identifiable and known risks that decedent was mentally
unstable, in need of psychiatric evaluation and treatment and was a clear suicide risk
if not properly monitored.

30. In failing to properly refer, assess, evaluate and otherwise treat plaintiff's decedent
as alleged herein, the defendants, violated the decedent's Constitutional rights by:
maintaining a policy, custom pattern and practice of failing to provide detainees, and
in particular, Shantee Parker with protection from clearly identified and known risks
of suicide; by providing woefully inadequate medical and nonexistent psychiatric care
to plaintiff's decedent; by failing to properly and timely follow-up on psychiatric
referrals and evaluations; by failing to diagnose and treat decedent's symptomotology
which indicated that she was mentally ill and warranted a psychiatric evaluation and
treatment; and otherwise acting with deliberate indifference to the serious medical
needs of this inmate, in violation of the Constitution.

31. Plaintiff further alleges that the defendants violated the decedent's Constitutional
rights by maintaining a policy, custom pattern and practice of failing to train station
officials and medical providers to provide detainees, and in particular, Shantee Parker,
with adequate protection from harm and protection from clearly identifiable and
known risks of suicide attempts; and the participation in the failure to provide
adequate protection from harm of the defendants

The plaintiff has clearly alleged that defendants were aware of Ms. Parker's suicidal

tendencies prior to her arrest on May 5, 2008, based on previous encounters; that she exhibited signs

of a potential suicide risk that would have been apparent to any properly trained officer; that the

defendants had a custom and policy of failing to adequately and properly train their personnel coming

into contact with individuals exhibiting suicidal tendencies; and that the defendants were otherwise

deliberately indifferent to the obvious and serious medical needs of Ms. Parker.  As such, the plaintiff

has more than satisfied the requirements set forth in *Atchinson v. District of Columbia*, 73 F.3d 418

(D.C. Cir. 1996).

We reject the District's argument that the complaint' use of the phrase "deliberate
indifference" without "any facts, or even generalized factual allegations" regarding

such alleged indifference renders the complaint inadequate.  The District's position is inconsistent with the model forms included in the Federal Rules of Civil Procedure, which, according to Rule 84, "are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate.  These model forms permit a plaintiff simply to allege a state of mind without providing a factual basis for that allegation.

73 F.3d at 423.

### C.   A Viable Cause Of Action Has Been Set Forth Against Defendant Lanier

To be sure, defendant Lanier is being sued because of her actions and/or inactions as a

supervisor for the derelictions of her subordinates.

> Supervisors, in addition to being liable for their own actions, are liable when their corrective inaction amounts to "deliberate indifference" to or "tacit authorization" of the violative practices.  <u>Williams v. Willits</u>, 853 F.2d 586, 588 (8th Cir. 1988).

<u>Howard v. Adkinson, et al.</u>, 887 F.2d 134, 137 (8th Cir. 1989).  Here, the plaintiff has alleged

exactly that Chief Lanier was in charge of the day to day operations of the Metropolitan Police

Department; that she is responsible for the training, supervision, monitoring and disciplining of

Metropolitan Police Officers; that she did with deliberate indifference to and with reckless

disregard for the safety and well-being of the plaintiff' decedent  and the public at large, allow

or caused to be committed the acts which deprived plaintiff's decedent of her civil rights; and

that defendant Lanier acted negligently, carelessly, recklessly and deliberately indifferently by

failing to properly train, supervise, control, direct and monitor officers in their duties and

responsibilities.  Accepting each of these allegations as true, as the Court must for purposes of

a Rule 12(b)(6) motion, plaintiff has clearly set forth a cause of action, under 42 U.S.C. § 1983

entirely premised on her deliberately indifferent acts.

> It is well established that a governmental officer may be held liable in damages for  constitutional  wrongs  engendered  by  his  failure  to  supervise  or  train

subordinates adequately.  This responsibility is not premised on the notion of vicarious liability; rather, it is bottomed on the principle that in some contexts failure of an official to safeguard against constitutional transgressions by those under his control constitutes an actionable wrong under Bivens and Section 1983. The party seeking to impose liability must demonstrate that the official had an obligation to supervise or train the wrongdoer in the manner alleged, that the duty was breached, and that this breach was a proximate cause of the injury.

Haynesworth v. Miller, 820 F. 2d 1245, 1259-60 (D.C. Cir. 1987).  Based upon plaintiff's complaint, there can be no legitimate question raised as to whether or not a viable § 1983 claim has been pled as to Chief Lanier.

As to qualified immunity, *Haynesworth* firmly established that a supervisor could be held liable for constitutional wrongs caused by a failure to supervise or train subordinates adequately. Thus, the right in question here was clearly established at the time of the alleged violation. Without question, defendants' motion insofar as it pertains to plaintiff's claim against Chief Lanier is entirely without merit.

To the extent defendants' claim that defendant Lanier may not be sued in her official capacity, they are in error.  Defendant Lanier may be sued in her official capacity. Morgan v. Barry et al., 785 F. Supp. 187, 195 ( D.D.C. 1992), and such an action is simply another way of pleading an action against an entity of which an officer is an agent. Hafer v. Melo, 502 U.S. 21, 25 (1991).

With respect to Count IV of plaintiff's complaint, negligence, Chief Lanier's negligence is supervisory.  In other words, plaintiff's claim is for negligent supervision on the part of Chief Lanier not for vicarious liability.  In *Brown v. Argenbright Sec. Inc.*, 782 A. 2d 752 (D.C. 2001), the D.C. Court of Appeals noted that

The Restatement defines negligent supervision as follows:

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

      (a) in giving improper or ambiguous orders or in failing to make proper regulations; or

      (b) in the employment of improper persons or instrumentalities in work involving risk or harm to others;

      (c) in the supervision of the activity; or

      (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

RESTATEMENT (SECOND) OF AGENCY § 213 (1958).

Clearly, plaintiff has alleged negligent supervision as to Chief Lanier.  Thus, no basis exists upon which to dismiss plaintiff's claim of negligence against either the District or Chief Lanier.

      Wherefore for the reasons stated herein and in the record of this proceeding, it is respectfully requested that defendants' motion be summarily denied.

                        Respectfully submitted,


                        /s/  Gregory L. Lattimer
                        Gregory L. Lattimer[371926]
                        1200 G Street, N.W.
                        Suite 800
                        Washington, DC 20005
                        (202) 638-0095