UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TRACIE ROBERTSON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 09-1188 (RMU) |
| | : | |
| v. | : | Re Document No.: 8 |
| | : | |
| DISTRICT OF COLUMBIA *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

GRANTING THE DEFENDANTS' MOTION TO DISMISS

**I. INTRODUCTION**

This matter is before the court on the defendants' motion to dismiss the plaintiff's amended complaint. The plaintiff brings this action on behalf of the estate of an individual who committed suicide while in the custody of the District of Columbia Metropolitan Police Department ("MPD"). The plaintiff has asserted § 1983 claims against the District of Columbia ("the District") and MPD Chief Cathy Lanier based on alleged violations of the decedent's Fifth and Eighth Amendment rights, as well as common law claims against these defendants for wrongful death and negligence. The defendants assert that the plaintiff has failed to state a § 1983 claim against them because the plaintiff has not adequately alleged that the District or Chief Lanier acted with deliberate indifference to the decedent's constitutional rights. The defendants further contend that absent these § 1983 claims, the court should decline to exercise pendent jurisdiction over the plaintiff's remaining state law claims. For the reasons discussed below, the court grants the defendants' motion, dismissing certain claims with prejudice and other claims without prejudice.

## II. FACTUAL & PROCEDURAL BACKGROUND[1]

On May 5, 2008, Shantee Parker ("the decedent") was arrested and taken to the MPD's Fourth District Precinct. Am. Compl. ¶ 6. While in custody, the decedent was placed alone in a cell without a working camera where she committed suicide by hanging herself. *Id.* ¶ 12. The plaintiff alleges that even though the decedent "exhibited many signs of distress, disorientation and confusion" at the time she was brought into custody, "none of the personnel at the 4th Precinct[] properly monitored [the] decedent or assured that she was not placed in an environment where instruments that could be used in a suicide attempt were [] available." *Id.* ¶ 8. The plaintiff also alleges that "the defendants had previously encountered [the] decedent and were well aware of the decedent's mental health frailties, including suicidal tendencies, long before May 5, 2008." *Id.* ¶ 6.

The plaintiff commenced this action on behalf of the decedent's estate in the Superior Court for the District of Columbia. *See generally* Compl. On June 29, 2009, the defendants removed the case to this court, and on September 8, 2009, the plaintiff filed an amended complaint. *See generally id.*; Am. Compl. In the amended complaint, the plaintiff asserts claims against the District and against Chief Lanier in her official and individual capacities. Am. Compl. ¶¶ 4-5. The plaintiff asserts that the defendants deprived the decedent of her Fifth and Eighth Amendment rights, in violation of 42 U.S.C. § 1983, by failing to provide detainees like the decedent with necessary protection and treatment and by failing to properly train and supervise MPD personnel. *Id.* ¶¶ 23-32. In addition, the plaintiff asserts common law wrongful death and negligence claims against the defendants. *Id.* ¶¶ 18-22, 33-36. On September 18,

---

[1] Because this matter is before the court on a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations, including mixed questions of law and fact, as true and draw all reasonable inference therfrom in the plaintiff's favor. *Warren v. Dist. of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004).

2009, the defendants filed this motion to dismiss the amended complaint. *See generally* Defs.' Mot. to Dismiss. The defendants contend that the amended complaint fails to state a claim for relief under § 1983, and that without those claims, the court lacks an independent basis for exercising jurisdiction over the remaining common law claims. *Id.* at 1-2. With the defendants' motion now ripe for adjudication, the court turns to the applicable legal standards and the parties' arguments.

### III. ANALYSIS

#### A. The Court Dismisses the Plaintiff's § 1983 Claims Under Rule 12(b)(6)

#### 1. Legal Standard for Dismissal Under Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-46, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [ ] would entitle him to relief"). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. Dist. of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

### 2. Legal Standard for Claims Under § 1983

Section 1983 provides a cause of action against

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983. A plaintiff bringing a § 1983 claim "must allege both (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the defendant acted 'under color of' the law of a state, territory or the District of Columbia." *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).

### 3. The Plaintiff's § 1983 Claims Premised on the Eighth Amendment

The defendants contend that the plaintiff's § 1983 claims premised on violations of the decedent's Eighth Amendment rights must be dismissed because the Eighth Amendment does not apply to pretrial detainees like the decedent. Defs.' Mot. to Dismiss at 6. The defendants are correct. The Eighth Amendment applies only to individuals who are being punished, and thus does not protect those against whom the government has not "secured a formal adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 536 (1979). Thus, "the [Eighth] Amendment does not apply to pretrial detainees." *Powers-Bunce v. Dist. of Columbia*, 479 F. Supp. 2d 146, 153 (D.D.C. 2007) (citing *Wolfish*, 441 U.S. at 536 n.16 (1979)); *accord Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992) (observing that "[a] pretrial detainee does not enjoy protection of the Eighth Amendment"). Accordingly, the court dismisses with prejudice the plaintiff's § 1983 claims based on alleged violations of the decedent's Eighth Amendment rights.

### 4. The Plaintiff's § 1983 Claims Premised on the Fifth Amendment

The defendants assert that the plaintiff has failed to state a § 1983 claim for a Fifth Amendment violation against the defendants. Defs.' Mot to Dismiss at 5-13. First, the defendants assert that insofar as the plaintiff has sued Chief Lanier in her official capacity, such claims must be dismissed because they duplicate the claims asserted against the District. *Id.* at

5

18. Furthermore, the defendants argue that the plaintiff's Fifth Amendment claims against Chief Lanier and the District must be dismissed because the plaintiff has failed to adequately allege that either defendant acted with "deliberate indifference" as necessary to state a claim under § 1983.[2] *Id*. at 6-7. The plaintiff responds that by alleging that the defendants were aware of the decedent's suicidal tendencies, that the decedent exhibited signs of potential suicide that would have been apparent to a properly trained officer and that the defendants acted "with deliberate indifference," the amended complaint satisfies the pleading requirements of Rule 8. Pl.'s Opp'n at 3-7. The plaintiff also maintains that Chief Lanier may be sued in her official capacity. *Id.* at 8.

### a. The Plaintiff's Claims Against Chief Lanier in Her Official Capacity

The plaintiff's Fifth Amendment claims against Chief Lanier in her official capacity require little discussion. "A § 1983 suit for damages against municipal officials in their official capacities is . . . equivalent to a suit against the municipality itself." *Atchinson v. Dist. of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996); *see also Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001) (holding that official capacity claims against officials allegedly responsible

---

[2] The defendants also argue that even if the plaintiff had stated a § 1983 claim against Chief Lanier, that claim would be barred because Chief Lanier would enjoy qualified immunity. Defs.' Mot. to Dismiss at 13-17. Although qualified immunity should be resolved "at the earliest possible stage in litigation," *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), as discussed below, the court dismisses with prejudice the plaintiff's Fifth Amendment claims against Chief Lanier in her official capacity and dismisses without prejudice the plaintiff's Fifth Amendment claims against Chief Lanier in her individual capacity for failure to state a claim. *See infra* Part III.A.4.a-b. Although the plaintiff may seek to revive her individual capacity claims against Chief Lanier by remedying the deficiencies in her pleading, at present, the factual averments underlying any such claim are too unformed for the court to conduct a qualified immunity analysis. *See Powers-Bunce v. Dist. of Columbia*, 479 F. Supp. 2d 146, 158 (D.D.C. 2007) (concluding that the plaintiff's factual averments were too vague and conclusory for the court to conduct a meaningful analysis of the individual defendants' qualified immunity and directing the plaintiff to provide a more definite statement of her claim); *see also Saucier*, 533 U.S. at 201 (observing that the qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition"). Accordingly, the court does not reach the issue of qualified immunity and grants the defendants leave to renew their motion to dismiss on this grounds if the plaintiff seeks to revive her individual capacity claims against Chief Lanier.

for an inmate's suicide could not be sustained under § 1983); *Hardy v. Dist. of Columbia*, 601 F. Supp. 2d 182, 191 (D.D.C. 2009) (dismissing claims brought against government employees in their "official capacities" as redundant to those brought against the District of Columbia); *Powers-Bunce*, 479 F. Supp. 2d at 157 (stating that "§ 1983 claims against municipal officers in their official capacities are equivalent to suits against the municipality itself and are typically dismissed as repetitive"). Because the District of Columbia is already a party to this suit, the plaintiff's claims against Chief Lanier in her official capacity are redundant to the claims against the District. Accordingly, the court dismisses those claims with prejudice.

### b. The Plaintiff's Claims Against Chief Lanier in Her Individual Capacity

Although the Eighth Amendment does not apply to pretrial detainees, those detainees are subject to the Fifth Amendment's prohibition against punishment "without due process of law." U.S. CONST. amend. V; *Wolfish*, 441 U.S. at 536 n.16. Courts have held that this Fifth Amendment protection is "at least as great as" that afforded prisoners under the Eighth Amendment, and thus, they generally analyze Fifth Amendment claims brought by pretrial detainees under the same standards governing Eighth Amendment claims brought by prison inmates. *See Payne for Hicks v. Churchich*, 161 F.3d 1030, 1041 (7th Cir. 1999) (observing that "when the § 1983 claim is based on a jail suicide, the degree of protection accorded a detainee is the same that an inmate receives when raising an inadequate medical attention claim under the Eighth Amendment"); *Barber*, 953 F.2d at 235 (noting that "the Eighth Amendment rights of prisoners are analogous to pretrial detainees' [due process rights]"); *see also Powers-Bunce*, 479 F. Supp. 2d at 153 (employing an Eighth Amendment analysis to assess the plaintiff's Fifth Amendment claim that officials' denial of medical care to a pretrial detainee who committed suicide violated the decedent's constitutional rights).

7

In cases involving the denial of medical care or the failure to prevent harm, the Eighth Amendment prohibits officials from acting with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *accord Estelle v. Gamble*, 429 U.S. 97, 106 (1976). For a plaintiff to state a claim that an individual acted with deliberate indifference to the rights of a pretrial detainee, the plaintiff must "allege that officials had subjective knowledge of [a] serious medical need and recklessly disregarded the excessive risk to inmate health or safety from that risk." *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). "[B]ecause deliberate indifference requires the official to have subjective knowledge of the substantial risk of harm, the D.C. Circuit has held that supervisory liability cannot be applied 'absent any allegation that the supervisor in question had actual or constructive knowledge of past transgressions or that the supervisors were aware of clearly deficient training.'" *Hardy*, 601 F. Supp. 2d at 191 (citing *Haynesworth v. Miller*, 820 F. 2d 1245, 1262 (D.C. Cir. 1987)); *see also Int'l Action Ctr. v. United States*, 365 F.3d 20, 28 (D.C. Cir. 2004) (stating that "[a] supervisor who merely fails to detect and prevent a subordinate's misconduct . . . cannot be liable for that misconduct" because to be liable, "the supervisor[] must know about the conduct").

Although the amended complaint states that Chief Lanier was "responsible for the day to day operations of the [MPD] and assuring that [MPD] police officers were properly trained," Am. Compl. ¶ 11, it contains no allegation that Chief Lanier was aware of any deficiencies in the training or supervision of MPD personnel, much less any deficiencies in training with respect to suicidal or mentally ill detainees, *see generally id.* Nor does the complaint contain any allegation that Chief Lanier knew that MPD personnel were failing to take the precautions necessary to ensure the safety of such detainees. *See generally id.*

Indeed, the only allegations in the complaint that even remotely touch upon Chief Lanier's subjective knowledge are the allegations (1) that staffing and equipment deficiencies at the Fourth District Precinct "that placed both detainees and police officers in immediate danger . . . had been brought to the attention of the defendants," *id.* ¶ 7, and (2) that "the defendants had previously encountered [the] decedent and were well aware of the decedent's mental health frailties, including suicidal tendencies," *id.* ¶ 6. Yet even if Chief Lanier had been aware of staffing and equipment deficiencies at the Fourth District Precinct, there is nothing in the complaint to suggest that she knew that these deficiencies posed a substantial risk of harm to potentially suicidal detainees like the decedent. *See Farmer*, 511 U.S. at 837 (stating that for an official to act with deliberate indifference "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference"). Furthermore, even if Chief Lanier was subjectively aware of the decedent's suicidal tendencies, the plaintiff's claims against Chief Lanier are premised not on her direct involvement in the decedent's detention, but rather on her purported failure to train and supervise MPD personnel and to ensure that potentially suicidal detainees receive adequate care and protection. *See generally id.* The allegation that Chief Lanier was subjectively aware of the decedent's mental illness and suicidal tendencies would not establish that she was aware of any deficiencies in training, supervision or procedures that endangered potentially suicidal detainees.

In sum, absent any allegation that the Chief Lanier was subjectively aware of any deficiencies in training, supervision or measures to ensure the safety of detainees like the decedent, the complaint fails to state a § 1983 claim against Chief Lanier for a Fifth Amendment violation. *Cf. Hardy*, 601 F. Supp. 2d at 190 (denying the defendant's motion to dismiss the plaintiffs' § 1983 claim against officials within the D.C. Department of Corrections because the

9

complaint contained allegations indicating that these individuals were aware of the substantial and unreasonable risk to detainee and inmate safety at the D.C. Jail). Because, however, the plaintiff may be able to remedy the deficiencies in this claim with additional factual allegations, the court dismisses the claim without prejudice.³ *See Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985) (observing that "dismissal with prejudice should be granted only when a trial court determines that 'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency'" (quoting *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962))).

### c. The Plaintiff's Claims Against the District of Columbia

A municipality can be held liable under § 1983 only if the municipality "itself is responsible for an unconstitutional deprivation of rights." *Atchinson*, 73 F.3d at 420 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978)). Thus, in considering whether a plaintiff has stated a claim for municipal liability under § 1983, "the district court must conduct a two-step inquiry." *Baker*, 326 F.3d at 1306. "The court must determine [1] whether the complaint states a claim for a predicate constitutional violation," and if so, "the court must determine [2] whether the complaint states a claim that a custom or policy of the municipality caused the violation." *Id.*; *accord Warren*, 353 F.3d at 38 (noting that "[*r*]*espondeat superior* does not apply" to claims of constitutional violations asserted against municipalities). Causation may be established by showing that "the municipality or one of its policymakers explicitly adopted the policy that was 'the moving force of the constitutional violation.'" *Warren*, 353 F.3d at 39 (quoting *Monell*, 436 U.S. at 694). "Or the municipality

---

³ In attempting to revive her claims against Chief Lanier, however, the plaintiff must bear in mind that although she need not provide detailed factual allegations, her complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).

may not have responded to a need . . . in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Id.* (quoting *Baker*, 326 F.3d at 1306) (internal quotation marks omitted).

The plaintiff identifies two policies or customs that allegedly support the District's municipal liability under § 1983. First, the plaintiff asserts that the District maintained a policy or custom of failing to train correctional officers to provide detainees such as the decedent with adequate mental health screening and evaluation. Am. Compl. ¶ 25. Second, the plaintiff alleges broadly that the District maintained a policy or custom of failing to provide detainees like the decedent with protection and treatment. *Id.* ¶¶ 25, 30.

Turning first to the plaintiff's failure to train claim against the District, the court notes that "a city's inaction, including its failure to train or supervise its employees adequately, constitutes a 'policy or custom' under *Monell* when it can be said that the failure amounts to 'deliberate indifference' towards the constitutional rights of persons in its domain." *Daskalea v. Dist. of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000) (citing *City of Canton v. Harris*, 489 U.S. 378, 388-89 & n.7 (1989)); *accord Powers-Bunce*, 479 F. Supp. 2d at 155 (citing *Dorman v. Dist. of Columbia*, 888 F.2d 159, 168 (D.C. Cir. 1989)). "Deliberate indifference is determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, but did not act." *Warren*, 353 F.3d at 39 (quoting *Baker*, 326 F.3d at 1306) (internal quotation marks omitted). This standard "involves more than mere negligence," and "it does *not* require the city to take reasonable care to discover and prevent constitutional violations. It simply means that, faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction." *Id.*

This Circuit discussed the pleading standards applicable to a § 1983 claim against a municipality for inadequate training in *Atchinson v. District of Columbia*. *See Atchinson*, 73 F.3d at 422-23. The plaintiff in *Atchinson* had asserted a § 1983 claim against the District after an MPD officer shot him in broad daylight moments after the officer had ordered the plaintiff to freeze. *Id.* at 419. The District's purported liability rested on its failure to properly train the officer in the use of deadly force. *Id.* at 422. The Circuit first concluded that the plaintiff had adequately alleged the existence of a municipal policy or custom "by alleging both a failure to train and an unusually serious instance of misconduct that, on its face, raises doubts about a municipality's training policies." *Id.* at 422-23. The Circuit then held that the complaint adequately pleaded deliberate indifference on the part of the District, stating that "the complaint's use of the phrase 'deliberate indifference' without 'any facts, or even generalized factual allegations' regarding such alleged indifference" did not render the complaint inadequate because Rule 8 "permit[s] a plaintiff simply to allege a state of mind without providing any factual basis for that allegation." *Id.* at 423; *accord Warren*, 353 F.3d at 39-40 (concluding that conclusory allegations of actual or constructive knowledge were sufficient to state a § 1983 claim against the District).

Relying on *Atchinson*, the plaintiff asserts that she has stated a § 1983 claim against the District, noting that she has alleged an instance of misconduct, inadequate training and "deliberate indifference" on the part of the District. Pl.'s Opp'n at 6-7. Yet the portion of *Atchinson* holding that a plaintiff adequately pleads "deliberate indifference" simply by invoking the phrase in his or her complaint appears to have been superseded by the Supreme Court's ruling in *Ashcroft v. Iqbal*. The plaintiff in *Iqbal* was a Pakistani citizen detained as a person of interest following the September 11 terrorist attacks. 129 S. Ct. at 1943. He asserted a *Bivens*

claims[4] against the U.S. Attorney General and the Director of the Federal Bureau of Investigation, alleging that they had violated his First and Fifth Amendments by adopting detention policies that discriminated against the plaintiff on the basis of his race, religion or national origin. *Id.* at 1944. The Supreme Court noted that to succeed on his claim, the plaintiff was required to plead and prove that the defendants acted "with discriminatory purpose." *Id.* at 1948. Furthermore, the Court noted that to state a claim against the defendants, that "the complaint must contain *facts* plausibly showing that petitioners purposefully adopted a policy of classifying post-September-11 detainees as 'of high interest' because of the race, religion, or national origin." *Id.* at 1953 (emphasis added). Because the complaint was devoid of facts suggesting that the defendants implemented the detention policies at issue based on an impermissible motive, the Court held that the complaint failed to state a claim for which relief could be granted. *Id.* at 1953-54 (observing that allegations of mental state cannot be alleged as a conclusion but must be supported by sufficient factual content).

Although the plaintiff in this case alleges that the District acted with deliberate indifference in failing to train its officers, the complaint contains no facts suggesting that the District knew or should have known of any deficiencies in the training of its officers with respect to potentially suicidal detainees. *See generally* Am. Compl. Accordingly, the complaint fails to state a § 1983 claim against the District based on improper training of MPD officers.

The plaintiff's more general claim that the District maintained a policy or custom of failing to provide adequate care to potentially suicidal detainees suffers from the same defect. As with the failure to train claim, the complaint contains no facts indicating that the District knew or should have known of any deficiencies in the treatment or care provided to potentially

---

[4] As the *Iqbal* Court noted, *Bivens* actions are the "federal analog" to suit brought under 42 U.S.C. § 1983. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).

suicidal detainees like the decedent. *See generally* Am. Compl. These deficiencies require dismissal of the plaintiff's § 1983 claim against the District. *See Ibrahim v. Dist. of Columbia*, 357 F. Supp. 2d 187, 195-96 (D.D.C. 2004) (dismissing the plaintiff's § 1983 claim against the District under Rule 12(b)(6) because the plaintiff failed to allege that District officials knew or should have known of the risk that his constitutional rights would be violated); *see also Warren v. Dist. of Columbia*, 2006 WL 2568014, at *3 (D.D.C. Sept. 5, 2006) (granting summary judgment to the District because the plaintiff had failed to "set forth any facts from which a reasonable juror could find that the District of Columbia knew or should known about the alleged . . . violations"); *cf. Brown v. Dist. of Columbia*, 514 F. 3d 1279, 1284 (D.C. Cir. 2008) (holding that the plaintiff alleged facts sufficient to hold the District liable under § 1983 because he claimed that he filed numerous grievances and that "the District of Columbia sat idly by while the plaintiff['s] serious medical needs were ignored after plaintiff had informed them of his medical needs"); *Smith v. Corr. Corp. of Am.*, 674 F. Supp. 2d 201, 207 (D.D.C. 2009) (holding that the plaintiff properly pleaded that a corporate detention facility knew or should have known of the risk that he would be provided inadequate medical care through factual allegations concerning complaints and grievances about such medical care that the court could reasonably infer were passed on to the corporation); *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 80-81 (D.D.C. 2009) (holding that the plaintiff had sufficiently alleged that the District knew or should have known of sexual harassment at a D.C. detention facility because she alleged that such harassment was commonplace and that the district court had previously found that sexual harassment was the "standard operating procedure" at the Department of Corrections). Accordingly, the court dismisses the plaintiff's § 1983 claims against the District without prejudice for failure to state a claim for which relief can be granted.

## B. The Court Declines to Exercise Supplemental Jurisdiction Over the Plaintiff's Common Law Wrongful Death and Negligence Claims

The defendant contends that the plaintiff's remaining common law claims for wrongful death and negligence should be dismissed because absent the plaintiff's § 1983 claims, the court lacks an independent basis for exercising jurisdiction over the remaining claims. Defs.' Mot. at 19-20. The plaintiff does not contest this argument. *See generally* Pl.'s Opp'n.

Under 28 U.S.C. § 1367, a district court that has original jurisdiction in a civil action "shall have supplemental jurisdiction over all other claims that are so related." 28 U.S.C. § 1367(a). A district court has the discretionary authority, however, to decline to exercise jurisdiction over supplemental claims when it has dismissed all claims over which it had original jurisdiction. *Id.* § 1367(c)(3). In determining whether to retain or dismiss supplemental state law claims, "the district court is to be 'guided by consideration of the factors enumerated in 28 U.S.C. § 1367(c).'" *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424 n.4 (D.C. Cir. 2005) (citing *Edmondson & Gallagher v. Alban Towers Tenants Assoc.*, 48 F.3d 1260, 1266 (D.C. Cir.1 995)). Furthermore, district courts are to consider the § 1367(c) factors within the framework of "judicial economy, convenience, fairness, and comity." *Edmondson & Gallagher*, 48 F.3d at 1266. "[I]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Shekoyan*, 409 F.3d at 423-24 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

In light of the dismissal of the plaintiff's claims under § 1983, the plaintiff's amended complaint contains no further federal causes of action over which this court has original subject matter jurisdiction. *See generally* Am. Compl. Further, the court concludes that the balance of

the factors under § 1367(c) weighs in favor of declining to exercise jurisdiction over the plaintiff's state law claims. First, because the court has yet to invest substantial time and resources on the state law claim, judicial economy does not favor retaining jurisdiction over these common law claims. *See Shekoyan*, 409 F.3d at 423-24. Moreover, there are no reasons apparent to the court that dismissal will inhibit or prejudice the plaintiff's ability to re-file the state law claim in the Superior Court for the District of Columbia because the statute of limitations for supplemental state law claims is tolled "while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). Thus, the court dismisses without prejudice the plaintiff's wrongful death and negligence claims. *See Kingman Park Civic Assoc. v. Williams*, 348 F.3d 1033, 1043 (D.C. Cir. 2003) (affirming the district court's dismissal of pendent state law claims after the federal claims were resolved in favor of the defendant).

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss the plaintiff's amended complaint and dismisses certain of the plaintiff's claims with prejudice and dismisses the remainder of the plaintiff's claims without prejudice. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 16th day of August, 2010.

                                        RICARDO M. URBINA
                                        United States District Judge